# EXHIBIT 46

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT; *et al.*, | ) ) ) |
| Plaintiffs, | ) Case No. 1:19-cv-00703 ) ) |
| v. | ) DECLARATION OF JOHN ) HORNING IN SUPPORT OF |
| DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of Interior; *et al.*, | ) PLAINTIFFS' MOTION FOR ) TEMPORARY RESTRAINING ) ORDER AND PRELIMINARY ) INJUNTION ) |
| Federal Defendants. | ) ) ) |

I, John Horning, declare as follows:

1. My name is John Horning. I am personally aware of the matters set forth below, and if called as a witness, could truthfully testify thereto. As to those matters which reflect a matter of opinion, they reflect my personal opinion and judgment upon the matter.

2. Since April 2002, I have served as Executive Director of WildEarth Guardians ("Guardians"). In my capacity as Executive Director, I am well aware of the financial holdings and status of the organization.

3. Guardians is a non-profit organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West. Headquartered in Santa Fe, New Mexico, Guardians has staff and other offices around the West, including in Denver, Portland, and Missoula.

4. As detailed in our most recent draft audit, we had net income at the end of 2018 of $4,465,107. The majority of these assets are legally constrained to supporting specific projects. Our expenses for 2018 were $4,105,479, and will be approximately $4,763,522 in 2019.

5. Our liquid assets at the end of 2018 were approximately $2,684,094. Our current operating expenses are approximately $397,307 per month. We typically receive little funding between January and June, relying on the liquid year-end assets from the previous year to carry the organization until the July-December fundraising season. We have just enough funds this year to carry the organization through the next funding cycle.

6. WildEarth Guardians' financial operations, and that of other, similar non-profits, are very different from a for-profit corporation because the money we receive from private foundations through grants—$1,353,825 in 2018—is typically dedicated to a particular expense. We are legally bound to perform specific activities with these monies. For example, we have a three-year grant from the Wilburforce Foundation in the amount of $85,000 per year to protect the Mexican gray wolf, other imperiled species, and the public lands within the Greater Gila region of New Mexico and Arizona. We cannot legally reallocate this foundation's money to other purposes. Another example of how our assets are restricted is our restoration program, which receives federal, state, and local government grants to restore rivers and streams. In 2018, we received over $973,760 in contracts to restore degraded streams. These grants require us to conduct specific activities, such as planting trees and shrubs, on specific streams for which we are then reimbursed. Re-allocating these monies is illegal.

7. As described above a large portion of the money we receive are grants that are restricted to fund a particular activity, whether planting trees or defending wolves. In addition, while the majority of the money we raise from donors and members is not restricted to specific

programs and activities, some of it is. We allocated unrestricted monies from members and donors to fund our general operating expenses. These general operating expenses cover all administrative functions, including administrative and executive staff salaries, rent, equipment purchase, maintenance and repair, and any other overhead expense of WildEarth Guardians. A very small relative and gross amount of our general operating expenses is allocated to litigation, including litigation to enforce federal environmental laws, which is in the public interest.

8. The fact of the matter is we simply do not have money available to pay a substantial bond in this case. WildEarth Guardians operates quite differently from a for-profit business. We do not make money and then disburse it to owners or shareholders; rather, we spend what we receive, and what we receive is almost always allocated to a specific purpose. There is no "profit margin" that results in excess funds and our tax return cannot be reviewed with that in mind. There simply are no profits to disburse or to save for the future in a non-profit corporation.

9. WildEarth Guardians brings public interest lawsuits under citizen suit and other judicial review provisions created by Congress that allow organizations such as ours to seek enforcement of environmental laws. WildEarth Guardians has no personal or financial stake in the litigation we pursue and therefore prosecutes lawsuits, such as this one, that benefit the public as a whole and are aimed at vindicating public interests. In the present litigation, WildEarth Guardians will reap no financial benefit should it prevail in the lawsuit.

10. This is not the only lawsuit in which WildEarth Guardians is a party. Currently we have approximately 50 cases pending throughout the country. Through such litigation we seek to protect endangered species habitat and human health and the environment in the public's interest and to enforce provisions of the National Environmental Policy Act and other

environmental laws. If WildEarth Guardians had to post a substantial bond each time we sought preliminary injunctive relief, it would curtail our ability to achieve our mission because we would not be able to post such bonds.

11.     The imposition of a bond would have a chilling effect on the ability of WildEarth Guardians to bring lawsuits to advance the public's interest. A single substantial injunction bond would greatly hinder WildEarth Guardians from carrying out our mission to protect the public interest through the courts. One such bond would consume an enormously disproportionate share of WildEarth Guardians' available resources, greatly reducing WildEarth Guardians' ability to bring cases in the public interest to vindicate public rights. If WildEarth Guardians were required to post substantial bonds in its lawsuits, it could not bear the financial risk of litigating the majority of its cases; such cases, including this one, likely would not be brought; and much of the land, air, and wildlife we are trying to protect in the public's interest would be irretrievably lost.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 29th day of July, 2019, in Santa Fe, New Mexico.

By: _____
    John C. Horning