# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DINE CITIZENS AGAINST RUINING OUR ENVIRONMENT, *et al.*,<br><br>　　　　Petitioners,<br><br>vs.<br><br>DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior, *et al.*,<br><br>　　　　Respondents,<br><br>and<br><br>DJR ENERGY HOLDINGS, LLC,<br><br>　　　　Applicant-Intervenor. | **AFFIDAVIT OF<br>DONALD F. KOENIG**<br><br>Case No. 1:19-cv-00703-WJ-JFR |

I, Donald F. Koenig, after first being duly sworn, state as follows:

　　　1.　　I am currently employed by DJR Energy Holdings, LLC (DJR) as Director of Reservoir Engineering responsible for day-to-day operations and development of DJR's wells in New Mexico, including the San Juan Basin. I've been a reservoir engineer for 22 years. I have personal knowledge of the facts in this declaration.

　　　2.　　DJR owns and operates approximately 98 horizontal wells that produce from federal, state, fee, and Indian minerals. DJR holds approximately 423 federal and 213 Indian oil and gas leases that the Bureau of Land Management (BLM) and Bureau of Indian Affairs (BIA) have issued in the San Juan Basin which are now or may in the future produce from the Mancos Shale.

3. Petitioners allege that they challenge the BLM's approval of 32 Environmental Assessments (EA). *See* Petition for Review, Appendix A. Based on DJR's review of the challenged EAs, DJR is the holder and operator of at least 16 permits to drill being challenged. DJR and its predecessor have spent tens of millions of dollars to develop their wells at issue in this case pursuant to valid existing lease rights. DJR has drilled six of the approved wells and those wells are currently producing oil.

4. The Petitioners ask the Court to declare that "BLM's approvals challenged herein allowing horizontal drilling and hydraulic fracturing in the Mancos Shale to date violate NEPA." *See* Petition, Relief Requested, ¶ A. Petitioners also ask the Court to vacate BLM's approvals and to "[e]njoin BLM from approving any pending or future APDs that permit horizontal drilling or hydraulic fracturing in the Mancos Shale formation pending full compliance with NEPA." *Id*. ¶¶ B, C. The Petitioners' motion for a temporary restraining order also seeks to shut down ongoing oil and gas production from the challenged APDs. Doc. 5-1, at 1.

5. The relief Petitioners request would, if granted, cause direct injury to DJR and its property interests in oil and gas leases on federal, state, fee, tribal, and allottee minerals in the area. Petitioners are seeking to invalidate the approvals for the six wells that are currently producing oil, and to enjoin DJR from drilling wells that have yet to be drilled. In acquiring the leases in question and completing the six wells drilled thus far, DJR has spent several hundred million dollars.

6. Shutting-in the six producing wells would result in lost production of approximately 1,970 BOEPD (Barrels of Equivalent Production/Day) with an approximate revenue of $920,483.00/month based on current product prices. During the shut-in, the lost

severance tax would exceed approximately $161,600.00/month.  During the shut-in, minimum royalty payments may have to be maintained regardless of production.  Further, DJR also has minimum volume commitments to a major oil purchaser in the region that if not met could trigger penalties.  Community impact would be felt among local contractors used to support the six existing producing wells such as contract labor and water hauling.  Just for these two contract services, the providers would see a reduction of approximately $51,800/month, thus placing a strain on the contractors' ability to maintain their work force.

7. When the injunction is eventually lifted, DJR will have to return the six wells to production, which will take approximately two weeks.  The cost of bringing the wells back on line will depend on whether workovers are required and there is a risk that shut in could cause permanent damage to the well, and that it will never produce in the same quantities as before.

8. In terms of DJR's drilling schedule, the company plans to drill an additional seven of the challenged wells in 2019.  With each month the wells are delayed, the monthly production not realized would be approximately 24,360 BOE (Barrels Oil Equivalent) for a total lost revenue of approximately $3,986,758/month.  If DJR was unable to move to other locations planned on the drilling rig schedule, a stand-by cost of $760,000/month would be incurred for idling the rig.  In addition, DJR would incur the costs of capital in the amount of $2,666,667/month.  Further, DJR has drilling commitments to the BLM, the State of New Mexico, and its partners to continue its active drilling program, and in case of one partner to drill at least six wells per year.  The inability to continue drilling Mancos Shale wells could cause DJR to default on those partner obligations.  Such a default could result in the large-scale

forfeiture of DJR's future rights to drill. Damages could likely exceed several hundred million dollars.

9. In total, DJR would incur a monthly cost of approximately $8,333,907.00 if the drilling schedule was suspended and stand-by charges were incurred, wells planned for drilling and completion were deferred, and existing producers were shut-in.

10. An injunction shutting in producing wells would also affect Indian allottees who rely on production royalties. DJR pays approximately $160,086/month in royalties to approximately 900 allottee mineral owners with proportionate interests in the undivided federal unit in which DJR has six producing wells. For wells on the rig schedule yet to be drilled, lost or deferred revenue to allottees would be approximately an additional $263,965/month.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

_____ [signature]

State of Colorado         )
                          ) ss
County of Denver          )

I, Brenda Fetchen, a Notary Public, do hereby certify that on this 5th day of August, 2019, Donald F. Koenig personally appeared before me, who, being first duly sworn by me, declared that she read and signed the foregoing Affidavit and that the statements therein contained are true.

In witness whereof, I have hereunto set my hand and seal this 5th day of August, 2019.

_____ [signature]
Notary Public

My Commission Expires: 10/17/2022

BRENDA FETCHEN
Notary Public
State of Colorado
Notary ID #20144040584
My Commission Expires 10-17-2022

4