# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| DINE CITIZENS AGAINST RUINING OUR ENVIRONMENT, *et al.*,<br><br>     Petitioners,<br><br>vs.<br><br>DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior, *et al.*,<br><br>     Respondents,<br><br>and<br><br>BP AMERICA PRODUCTION COMPANY,<br><br>     Applicant-Intervenor. | **AFFIDAVIT OF**<br>**JOHN F. MUMMERY**<br><br>Case No. 1:19-cv-00703-WJ-JFR |

I, John F. Mummery, after first being duly sworn, state as follows:

1. I am currently employed by BP America Production Company ("BP America") as the West Business Unit Operations Manager over all operations in the San Juan Basin of Colorado and New Mexico. I have personal knowledge of the facts in this declaration.

2. BP America owns and operates six horizontal wells that produce from the "dry gas" horizon of the Mancos Shale in the Northeast Blanco Unit (NEBU) in San Juan County, New Mexico. These wells all produce federal minerals from federal oil and gas leases that the Bureau of Land Management ("BLM") has issued in the San Juan Basin, as well as some fee minerals. The water used to drill, complete, and hydraulically fracture the wells was purchased from the Navajo Nation as owner of the Navajo Agricultural Products Industry (NAPI).

3.     These "dry gas" Mancos Shale wells produce no liquid hydrocarbons such as oil or condensate and only de minimis amounts of water.  No liquid storage tanks are required, and a small amount of produced water is piped away for underground injection disposal.  The gas produced from the wells is transmitted by pipeline to market, minimizing truck traffic.  There is no flaring associated with production activities.  These wells are approximately 60 miles from the Chaco Culture National Historical Park.

4.     Petitioners allege that they challenge the BLM's approval of 32 Environmental Assessments ("EAs").  *See* Petition for Review, Appendix A.  Based on our review of the challenged EAs, BP America is the holder and operator of at least six permits to drill being challenged.  BP America has drilled two of the approved wells, the NEBU 605 COM 1H and NEBU 605 COM 2H, which are currently producing.  A map showing the location of these challenged producing wells is included as Attachment A, hereto.  One other well drilled, but not completed.  The other three have not been drilled.

5.     The Petitioners ask the Court to declare that "BLM's approvals challenged herein allowing horizontal drilling and hydraulic fracturing in the Mancos Shale to date violate NEPA." *See* Petition, Relief Requested, ¶ A.  Petitioners also ask the Court to vacate BLM's approvals and to "[e]njoin BLM from approving any pending or future APDs that permit horizontal drilling or hydraulic fracturing in the Mancos Shale formation pending full compliance with NEPA."  *Id*. ¶¶ B, C.  The Petitioners' motion for a temporary restraining order also seeks to shut down ongoing oil and gas production from the challenged APDs.  Doc. 5-1, at 1.

5.     The relief Petitioners request would, if granted, cause direct injury to BP America and its property interests in oil and gas leases on federal lands in the area.  Petitioners are seeking

to invalidate the approvals for the two wells that BP America has already drilled, and to enjoin BP America from drilling wells that have yet to be drilled. In acquiring the leases in question and completing the wells drilled thus far, BP America has invested $28 million.

6. If the two producing wells are shut in, BP America will suffer a gross monetary loss of approximately $373,000 to $460,000 per month with associated royalty losses ranging from $47,000 to $58,000 per month.

7. Additionally, BP America may suffer permanent losses from wellbore damage if the wells are shut in. These horizontal Mancos dry gas wells are engineered to remain on production so that a stable flow of dry gas out of the reservoir can ensure wellbore integrity. There is no technical precedent to shut in periods exceeding a few days for these wells. The wells may therefore sustain permanent damage due to either water migration or shale collapse if they are shut in for longer than a few days. Returning these wells to production may be costly and require additional operations in the form of recompletion or repairs. Further, if the wellbore is permanently damaged, the lost production and associated revenues and royalties will never be recovered.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

_____
[signature]

State of Colorado )
                               ) ss
County of La Plata )

    I, Janelle Thunstrom a Notary Public, do hereby certify that on this 5th day of August, 2019, John F. Mummery personally appeared before me, who, being first duly sworn by me, declared that she read and signed the foregoing Affidavit and that the statements therein contained are true.

    In witness whereof, I have hereunto set my hand and seal this 5th day of August 2019.

_____
Notary Public

My Commission Expires: 03/01/2022

JANELLE THUNSTROM
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184009898
MY COMMISSION EXPIRES MAR 1, 2022

13334855_1.docx

# ATTACHMENT A

