**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| DINÉ CITIZENS AGAINST RUINING OUR ENVIRONMENT; SAN JUAN CITIZENS ALLIANCE; SIERRA CLUB and WILDEARTH GUARDIANS, | No. 1:19-cv-00703-WJ-JFR |
| Plaintiffs, | |
| v. | |
| DAVID BERNHARDT, in his official capacity as Secretary of the Interior; and UNITED STATES BUREAU OF LAND MANAGEMENT; TIM SPISAK, in his official capacity as Acting New Mexico State Director of the Bureau of Land Management; and RICK FIELDS, in his official capacity as Field Manager of the Bureau of Land Management Farmington Field Office, | |
| Defendants. | |

**MOTION OF THE AMERICAN PETROLEUM INSTITUTE FOR LEAVE TO**
**INTERVENE AS A DEFENDANT**

Pursuant to Fed. R. Civ. P. 24, the American Petroleum Institute ("API") respectfully moves for leave to intervene in the above-captioned matter. Counsel for API consulted with counsel for Plaintiffs and the Federal Defendants regarding the relief requested herein. The Federal Defendants have indicated that they do not object to, or seek to impose any conditions on, API's intervention. Plaintiffs have indicated that they would not oppose API's intervention if API agreed to: (1) file consolidated briefs with the individual operators that previously moved to intervene (Dkt. No. 11); file briefs in accordance with the date for the Federal Defendants' briefs; (3) limit its arguments to the existing (or amended) claims; and (4) confer with the Federal Defendants to minimize unnecessary duplication of arguments. While API can agree to the last

three conditions requested by Plaintiffs, it cannot agree to joint briefing with the operators and, as further detailed below, the Court should reject that request.

## BACKGROUND

### A.    Plaintiffs' Legal Challenge.

This lawsuit challenges the approval of applications for permits to drill ("APDs") in the Mancos Shale in New Mexico by Defendants Bureau of Land Management ("BLM"), the Secretary of the Interior, the Acting New Mexico State Director of BLM, and the Field Manager for BLM's Farmington Field Office (collectively, the "Federal Defendants"). *See* Petition for Review (Dkt. No. 1), ¶ 1. Plaintiffs Diné Citizens Against Ruining Our Environment, San Juan Citizens Alliance, Sierra Club, and WildEarth Guardians (collectively, "Plaintiffs") contend that the Federal Defendants' approval decisions violated the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321, *et seq.*, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, *et seq.  See* Petition, ¶¶ 1, 5. Plaintiffs allege that the Federal Defendants' approvals "evidence a continuing pattern of approving individual drilling permits into the Mancos Shale through piecemeal, boilerplate environmental assessments ("EAs"), and without considering the cumulative impacts of development across the Greater Chaco Landscape" despite the approved "use of horizontal drilling and multi-stage hydraulic fracturing . . . ." *Id*. ¶¶ 1, 2.

To remedy the alleged violations, Plaintiffs ask the Court to, *inter alia*, (1) "[d]eclare that BLM's approvals . . . allowing horizontal drilling and hydraulic fracturing in the Mancos Shale to date violate NEPA"; (2) "[v]acate BLM's approvals of all" challenged EAs "which approve horizontal drilling and hydraulic fracturing in the Mancos Shale"; and (3) "[e]njoin BLM from approving any pending or future APDs that permit horizontal drilling or hydraulic fracturing in the Mancos Shale formation pending full compliance with NEPA[.]" *Id*., Relief Requested, ¶¶ A–C.

### B.     API's Interest in Plaintiffs' Legal Challenge.

API is the primary national trade association of the oil and natural gas industry, representing more than 625 companies involved in all aspects of that industry, including the exploration, production, shipping, transportation, and refining of crude oil.  *See* Declaration of Erik Milito, ¶ 1 ("Milito Decl.") (attached as Exhibit 1 hereto).  Together with its member companies, API is committed to ensuring a strong, viable U.S. oil and natural gas industry capable of meeting the energy needs of our Nation in an efficient and environmentally responsible manner. *See* Milito Decl. ¶ 2.

API members are deeply engaged in the exploration for and development of oil and gas resources, including in the Mancos Shale in New Mexico, and their interests are directly affected by the instant legal challenge.  *See infra* pp. 5-12.  To protect their interests, API is entitled to intervene in this action as of right, or, in the alternative, through permissive intervention. Numerous federal courts, including this Court, have routinely granted API's motions to intervene in lawsuits brought by plaintiffs challenging Governmental actions with respect to oil and gas activities across the country.  Indeed, this Court previously granted API's motion to intervene in Plaintiffs' prior lawsuit challenging the Federal Defendants' approvals of other APDs for horizontal drilling and hydraulic fracturing operations on the Mancos Shale.  *See Diné Citizens Against Ruining our Envt. v. Jewell*, No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015).[1]

---

[1] *See also*, *e.g.*, *Wilderness Workshop, et al. v. U.S. Bureau of Land Mgmt.*, No. 18-cv-987-WYD, Dkt. No. 15, (D. Colo. Aug. 16, 2018); *Ctr. for Sustainable Economy v. Jewell*, 779 F.3d 588 (D.C. Cir. 2015) (intervened in challenge to five-year leasing program); *Defenders of Wildlife v. Bur. of Ocean Energy Mgmt.*, 684 F.3d 1242 (11th Cir. 2012) (challenge to lease sales and use of categorical exclusions to approve exploration plans); *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 17-cv-372, Dkt. No. 52 (S.D. Ohio Sept. 29, 2017) (challenge to lease sales in Ohio); *League of Conservation Voters v. Trump*, No. 17-cv-101, Dkt. No. 22 (D. Ak. July 21, 2017) (challenge to presidential authority to resume oil and gas leasing on previously withdrawn lands);

**ARGUMENT**

**I.     API IS ENTITLED TO INTERVENE AS OF RIGHT.**

Fed. R. Civ. P. 24(a) provides for intervention as of right if each of the following tests are met: (1) the motion is timely made, (2) the applicant claims a legally protectable interest relating to the property or transaction which is the subject of the action; (3) the interest could be impaired or impeded as a result of the litigation; and (4) existing parties do not adequately represent the applicant's interests.  Fed. R. Civ. P. 24 (a).  *See also WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 995 (10th Cir. 2009) (explaining that the Tenth Circuit follows "a somewhat liberal line in allowing intervention" based on "the practical effect of the litigation on the applicant for intervention" (quotations omitted)); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  API's intervention satisfies each of these criteria.[2]

---

*WildEarth Guardians v. Jewell*, No. 16-cv-1724, Dkt. No. 19 (D.D.C. Nov. 23, 2016) (challenges to lease sales in Colorado, Utah and Wyoming); *Envtl. Defense Ctr. v. Bur. of Safety & Envtl. Enforcement*, No. 14-cv-9281, 2015 WL 12734012 (C.D. Cal. Apr. 2, 2015) (same); *Oceana v. Bur. of Ocean Energy Mgmt.*, 37 F. Supp. 3d 147 (D.D.C. 2014) (challenge to lease sales); *Native Vill. of Chickaloon v. Nat'l Marine Fisheries Serv.*, 947 F. Supp. 2d 1031 (D. Alaska 2013) (challenge to geological and geophysical survey permit); *Defenders of Wildlife v. Minerals Mgmt. Serv.*, No. 10-cv-254, 2010 WL 3169337 (S.D. Ala. Aug. 9, 2010) (challenge to lease sale).

[2] For purposes of applying Rule 24 requirements, API may assert the interests of its members.  An association may act on behalf of its members when its members would otherwise have standing in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *See, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv., Inc.*, 528 U.S. 167, 181 (2000); *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013).  API's showing that its members' economic interests in this litigation meet the Fed. R. Civ. P. 24 standards also demonstrates that its members would themselves have standing. *See infra* pp. 5-12. *Cf. Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 821 n.3 (9th Cir. 2001).  Representation in litigation is germane to API's overall purpose of advancing the interests of the oil and gas industry, and "mere pertinence between litigation subject and organizational purpose is sufficient." *Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000); *see also Sierra Club v. Glickman*, 82 F.3d 106, 108–10 (5th Cir. 1996) (goals of suit to limit farmers' water pumping germane to association purpose to advance

**A.      API Has Timely Moved For Intervention.**

This motion to intervene is timely because it has been filed less than one month "after the [Plaintiffs] filed" its lawsuit, *Western Energy Alliance v. Zinke*, 877 F.3d 1157, 1164–65 (10th Cir. 2017) (finding motion to intervene timely where filed two months after suit commenced), and before a hearing has been scheduled on Plaintiffs' motion for a temporary restraining order or preliminary injunction.[3] *See Western Energy Alliance*, 877 F.3d at 1164–65 ("Given how early in the lawsuit the groups moved to intervene, and, as a result, the lack of prejudice to the [plaintiff], we agree with the district court's determination that the motion was timely.").

**B.      API Possesses A Cognizable Interest That May Be Impaired Or Impeded As A Result Of This Proceeding.**

Oil and gas development on federal lands is carried out exclusively through private oil and gas companies, which acquire leases through a competitive bidding process and then engage in exploration efforts that, if successful, will lead to production. *See, e.g.*, 30 U.S.C. §§ 181, 187; 43 C.F.R., Part 3100; Milito Decl. ¶ 5. API members have bid significant sums to obtain leases from

---

farmers' interests); Milito Decl. ¶ 2. It is not necessary for API members to be included in this case individually, especially because no monetary relief is being sought. *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343–44 (1977). API thus satisfies the three requirements of associational standing.

[3] Because the Petition for Review seeks review of an administrative record pursuant to the APA, the case is governed by the Federal Rules of Appellate Procedure, and no answer is required. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579–80 (10th Cir. 1994). *See also, e.g.*, *San Diego Cattlemen's Coop. Ass'n v. Vilsack*, No. 2015 WL 12866452, at *4 (D.N.M. April 20, 2015) (denying Plaintiff's motion to require federal defendants to file an answer in lawsuit brought under the APA); *WildEarth Guardians v. U.S. Forest Serv.*, 668 F. Supp. 2d 1314, 1323 (D.N.M. 2009) ("Pursuant to *Olenhouse* . . . , claims under the APA are treated as appeals and governed by reference to the Federal Rules of Appellate Procedure."). API denies that federal laws have been violated by the Federal Defendants, and will brief the merits of Plaintiffs' Petition for Review after intervention is granted.

the Government for the opportunity to explore for and develop valuable oil and gas resources, including in New Mexico.  *See* Milito Decl. ¶ 6.

Operations for the exploration and development of oil and gas resources on a lease—including drilling operations—are conducted pursuant to plans and permits that must be approved by the BLM, including APDs.  *See* 43 C.F.R. §§ 3160.0-1, *et seq.*; Milito Decl. ¶¶ 5, 7.  API's members have used hydraulic fracturing to develop oil and natural gas reservoirs for decades, and this technique is now used throughout the United States, from the Marcellus Shale in the Northeast, to the Barnett Shale in Texas, to the Bakken formation in North Dakota.  *See* Milito Decl. ¶ 11.  The BLM-approved APD of at least one API member is challenged by Plaintiffs in this action.  *See* Milito Decl., ¶ 8.  In addition, API expects that some of its members, not necessarily limited to those currently holding permits, will continue to actively pursue opportunities to explore and develop tight oil and natural gas plays on BLM land in the future in the Mancos Shale formation and elsewhere.  *See id*.

Plaintiffs' claims that the Federal Defendants must conduct further NEPA environmental reviews before approving APDs proposing horizontal drilling and hydraulic fracturing operations, *see* Petition ¶¶ 89–95, and the Court should therefore "[v]acate BLM's approval" of the challenged APDs and "[e]njoin BLM from approving any pending or future APDs that permit horizontal drilling or hydraulic fracturing in the Mancos Shale," *see id*., Relief Requested, ¶¶ B, C, thus directly affect the members' interests.  These interests include the property, contractual, and other business interests of existing leaseholders in developing their purchased leases, *see* Milito Decl. ¶¶ 8, 12-13, the interests of API members in seeking approval in the future to conduct operations on their leases, *see id.*, and the interests of member companies that provide support services—including materials, equipment, well completion, and other support services—for exploration and

development activities on existing leases.  *See* Milito Decl. ¶ 13.  At a minimum, the requested injunction, pending a potentially lengthy NEPA review process, could substantially delay the activities of API's members.  *See* Milito Decl. ¶ 14.

"[A] would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied.  This burden is minimal."  *WildEarth Guardians*, 573 F.3d at 995 (quotation omitted).  Here, although Governmental agencies and officials are named as the defendants, in practice the exploration and drilling activities of API members are the "subject of" the agency action that Plaintiffs' lawsuit challenges—Federal Defendants' approval of members' oil and gas development operations.  This clearly qualifies API for intervention as of right.  *See Sierra Club v. EPA*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (party has standing when its activities are the ultimate object of the legal challenge); *see also*, *e.g.*, *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) ("[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation."); *In re City of Fall River, Ma.*, 470 F.3d 30, 31 (1st Cir. 2006) (recognizing that intervenor's application to import natural gas was "Petitioners' ultimate target" in seeking to compel agency to issue regulations); Fed. R. Civ. P. 24 advisory committee's note on the 1966 amendments ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . .").

Ultimately, Plaintiffs ask this Court to end current and prospective activities of API members.  *See* Petition, Relief Requested, ¶¶ B, C.  Private parties may intervene in defense of challenged conduct when their interests could thus be directly implicated.  *See WildEarth Guardians*, 573 F.3d at 995 (finding sufficient interest where agency approval of activities on party's property is the "subject of" NEPA lawsuit); *id.* at 996 ("The threat of economic injury from

7

the outcome of litigation undoubtedly gives a petitioner the requisite interest." (quotation omitted)); *Fund for Animals*, 322 F.3d at 733 (foreign governmental agency may intervene in defense of legal challenge to federal regulations that would, if successful, limit sport hunting by U.S. citizens in that country; the country's sheep "are the subject of the disputed regulations"); *Ross v. Marshall*, 426 F.3d 745, 757 n.46 (5th Cir. 2005) ("With respect to a potential intervenor seeking to *defend* an interest being attacked by a plaintiff in a lawsuit, we have observed that the intervenor is a real party in interest when the suit was intended to have a 'direct impact' on the intervenor.") *WildEarth Guardians*, 2016 WL 660123, at *2 (holding that owners of mines subject to the challenged NEPA review "have an obvious, significant interest" in the litigation).

In this regard, API's members are in a similar situation as the members of the association seeking intervention in *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998). The plaintiffs there challenged an EPA rule excluding munitions from stringent hazardous waste regulation, and the D.C. Circuit held that the Chemical Manufacturers Association ("CMA") had standing to intervene in defense of the EPA rule:

> CMA has standing because some of its members produce military munitions and operate military firing ranges regulated under the Military Munitions Rule. These companies are directly subject to the challenged Rule, and they benefit from the EPA's "intended use" interpretation (under which most military munitions at firing ranges are not solid waste) . . . that the [petitioner] is challenging in this appeal. These CMA members would suffer concrete injury if the court grants the relief the petitioners seek; they would therefore have standing to intervene in their own right, and we agree with the litigants that the CMA has standing to intervene on their behalf in support of the EPA.

*Military Toxics*, 146 F.3d at 954.

API likewise has Article III standing—and thus a sufficient interest to support intervention—because its members currently own leases and challenged APD approvals, and therefore have the opportunity to conduct (and request approval to conduct) exploration, development, and drilling operations on their leases with BLM approval. *See supra*. API members

8

are thus engaged in activities that are "directly subject to the challenged" Government policy and "would suffer concrete injury if the court grants the relief petitioners seek," *i.e.*, voiding the challenged APD approvals of horizontal drilling and hydraulic fracturing operations and enjoining future approvals of such operations. *Military Toxics*, 146 F.3d at 954. *See also*, *e.g.*, *Supreme Beef Processors, Inc. v. U.S. Dep't of Agric.*, 275 F.3d 432, 437 n.14 (5th Cir. 2001) (association had Article III standing and sufficient interest to intervene where lawsuit "deal[t] with the application of a [regulatory] standard that affects [association's] members"); *Fund for Animals*, 322 F.3d at 733–34 (agreeing that Article III standing exists where "injury is fairly traceable to the regulatory action . . . that the [plaintiff] seeks in the underlying lawsuit" and "it is likely that a decision favorable to the [applicant for intervention] would prevent that loss from occurring"); *id.* at 734 (in identifying a qualifying injury under Rule 24(a), "we see no meaningful distinction between a regulation that directly regulates a party and one that directly regulates the disposition of a party's property"); *Atlantic States Legal Found., Inc. v. EPA*, 325 F.3d 281, 282, 285 (D.C. Cir. 2003) (intervention by trade association of utilities regulated by EPA regulation).

In addition, API's members undoubtedly satisfy prudential standing in this litigation because their activities are the "subject of the contested regulatory action," *Amgen, Inc. v. Smith*, 357 F.3d 103, 108 (D.C. Cir. 2004) (quotation omitted)—namely, the Federal Defendants' approval of their APDs. Furthermore, the interests of API members correspond with the Mineral Leasing Act's purpose "to provide wise development of [oil and gas] natural resources," *see California v. Udall*, 296 F.2d 384, 388 (D.C. Cir. 1961), and NEPA's similar "national policy" to "encourage productive and enjoyable harmony between man and his environment," 42 U.S.C. § 4321. *See* Milito Decl. ¶ 2. *See also*, *e.g.*, *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (With respect to prudential standing, a party's interests need only "*arguably* fall within the zone of

interests protected *or regulated* by the statutory provision" at issue) (emphasis added); *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399–400 (1987) (holding that trade associations had standing, because even "[i]n cases where the plaintiff is not itself the subject of the contested regulatory action, the [zone of interest] test denies a right of review [only] if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.  The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.").

Finally, the Court's disposition of this action would impair the ability of API (and its members) to protect its interests.  The impairment prong of Rule 24(a) "look[s] to the practical consequences of denying intervention." *Natural Res. Def. Council v. Costle*, 561 F.3d 904, 909 (D.C. Cir. 1977) (quotation omitted).  This element "presents a minimal burden." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010).  It is irrelevant whether the applicant "could reverse an unfavorable ruling" in subsequent proceedings because "there is no question that the task of reestablishing the status quo if the [plaintiff] succeeds . . . will be difficult and burdensome." *Fund for Animals*, 322 F.3d at 735.  *See also WildEarth Guardians*, 604 F.3d at 1199 (noting interest may be impaired even if proposed intervenor had the ability to participate in remanded administrative process).

Here, one or more API members *currently* have approved APDs for horizontal drilling or hydraulic fracturing operations, or the opportunity to seek BLM approval of such operations through future APDs, and would face practical difficulty in restoring the status quo following a victory by Plaintiffs voiding the BLM's existing APD approvals, enjoining approval of members' future APDs, and requiring Federal Defendants to conduct additional environmental reviews.  At

a minimum, such action would impose a lengthy administrative delay and related costs and uncertainty upon API members. *See Conservation Law Found. of New England v. Mosbacher*, 966 F.2d 39, 43 (1st Cir. 1992) (fishing group may intervene to defend lawsuit seeking to force government to change regulatory status quo, when "changes in the rules will affect the proposed intervenors' businesses, both immediately and in the future") (citation omitted). *Cf. Humane Society of the U.S. v. Clark*, 109 F.R.D. 518, 520 (D.D.C. 1985) (sufficient interest of recreational hunting and trapping groups in "present right of their members to hunt and trap on public lands"). At worst, any subsequent lawsuit filed by API to restore the status quo "would be constrained by the *stare decisis* effect of" the present lawsuit, thereby supporting intervention in this initial lawsuit. *Sierra Club v. U.S. EPA*, 995 F.2d 1478, 1486 (9th Cir. 1993), *abrogated on other grounds*, 630 F.3d 1173 (9th Cir. 2011). *See also WildEarth Guardians*, 604 F.3d at 1199 ("[F]or purposes of Rule 24(a)(2), sufficient impairment may result even from the *stare decisis* effect of a district court's judgment." (quotation omitted)).

For all these reasons, API is entitled to intervene. Indeed, federal appellate and district courts have routinely and repeatedly permitted industry trade associations to intervene on behalf of their members' interests in litigation involving oil and gas leasing and operations. *See supra* p. 3 & n.1; *see also e.g.*, *Ctr. for Biological Diversity v. U.S. Dep't of the Interior*, 563 F.3d 466 (D.C. Cir. 2009) (API granted intervention in challenge to Government's five-year OCS leasing program under NEPA and OCS Lands Act); *Natural Res. Def. Council, Inc. v. Hodel*, 865 F.2d 288, 293 (D.C. Cir. 1988) (same); *California v. Watt*, 712 F.2d 584 (D.C. Cir. 1983) (same); *California v. Watt*, 668 F.2d 1290, 1294 n.1 (D.C. Cir. 1981) (same); *Alaska v. Andrus*, 580 F.2d 465 (D.C. Cir. 1978) (trade association granted intervention in defense of first OCS lease sale

offshore Alaska); *Suffolk Cnty. v. Sec'y of the Interior*, 562 F.2d 1368 (2d Cir. 1977) (trade association granted intervention in defense of first Atlantic OCS lease sale).

### C. API's Interests Will Not Be Adequately Protected By Existing Parties.

An applicant for intervention need only show that representation of its interest by an existing party "may be" inadequate. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 & n.10 (1972). The burden of the applicant in meeting that test is "minimal." *Id. See also*, *e.g.*, *WildEarth Guardians*, 573 F.3d at 996 ("[T]he possibility of divergence of interest need not be great in order to satisfy the burden," and the movant "need only show the ***possibility*** of inadequate representation." (quotations omitted) (emphasis original)).

In this case, Plaintiffs' position is inimical to that of API, and the Federal Defendants' "obligation is to represent the interests of the American people . . . while [the Associations'] concern is for" the interests of their members. *See Fund for Animals*, 322 F.3d at 736 (granting intervention). As the Supreme Court explained in *Trbovich*, a government agency cannot be characterized as able adequately to represent the interests of an intervenor if the agency has substantially similar interests to a potential intervenor, but has a statutory charge to pursue a different goal as well. *Trbovich*, 404 U.S. at 538–39. Here, while the goals of the Mineral Leasing Act include the interest of API's members in "wise development" of oil and gas resources on public land, *see Udall*, 296 F.2d at 388, the Government's statutory goals—including those imposed by NEPA and the FLPMA—are not limited to those interests, *see*, *e.g.*, 43 U.S.C. § 1701(a); 42 U.S.C. § 4321. Although the Federal Defendants' and API's interests could be expected to coincide in defending the claim of violations asserted in this action, these differing goals support API's intervention as of right.

Moreover, as the Tenth Circuit has explained, the inadequate representation "showing is easily made when the party upon which the intervenor must rely is the government, whose

obligation is to represent . . . the public interest generally, and who may not view that interest as coextensive with the intervenor's particular interest." *WildEarth Guardians*, 573 F.3d at 996 (quotation omitted). Here, BLM "has multiple objectives and could well decide to embrace some of the environmental goals" of the Plaintiffs at the expense of the economic interests of API's members. *Id.* at 997. *See also Dimond v. District of Columbia*, 792 F.2d 179, 192–93 (D.C. Cir. 1986) (explaining that Government "is charged by law with representing the public interest of [all] its citizens" rather than the "narrow and 'parochial' financial interest" of intervenor); *Pueblo of Jemez v. United States*, No. 12-cv-800, 2016 WL 8136015, at *3 (D.N.M. Sept. 20, 2016) ("[T]he Tenth Circuit has recognized that a governmental defendant often cannot adequately represent the interests of a non-governmental party."). Because the interests of API's members "cannot be subsumed within the shared interests of the citizens [at large], no presumption exists that the [Government] will adequately represent [their] interests." *Dimond*, 792 F.3d at 193. *See also WildEarth Guardians*, 604 F.3d at 1200 (Tenth Circuit has "repeatedly recognized that it is on its face impossible for a government agency to carry the task of protecting the public's interests and the private interests of a prospective intervenor" (quotation omitted)); *Fund for Animals*, 322 F.3d at 736–37 ("tactical similarity" with parties "does not assure adequacy of representation") (citation omitted); *Apotex, Inc. v. FDA*, 508 F. Supp. 2d 78, 80 n.2 (D.D.C. 2007) (representation inadequate where applicant "has a financial interest . . . that is not an interest shared by the public").

The individual operators and allottees that are currently seeking intervention, *see* Operator Mot. to Intervene (Dkt. No. 11); Navajo Allottee Mot. to Intervene (Dkt. No. 23); Enduring Resources Mot. to Intervene (Dkt. No. 32), also do not adequately represent API member interests. Although their interests may parallel the interests of other API member permit holders, they will justifiably focus on protecting their individual economic interests in the specific APDs they have

already been granted, or from which they derive royalties.  Moreover, there is no assurance that

their interests will not diverge from the interests of other API members in the future.  They could,

for example, reach a settlement that protects their individual interests but not the interests of other

permit holders.  *See Sanguine, Ltd. v. U.S. Dept. of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984);

*Mille Lacs Band of Chippewa Indians v. Minn.*, 989 F.2d 994, 1001 (8th Cir. 1993) (noting the

increased risk of divergence of interests where the case is settled rather than litigated).

In any event, these other potential intervenors cannot adequately represent the interests of

API members who may be competitors and may seek to obtain APDs in the future.  Nor can they

be expected to represent the interests of API members who are service companies rather than

permit holders.  Notably, this Court granted API's motion to intervene in Plaintiffs' prior challenge

to BLM's approvals of APDs including hydraulic fracturing operations even though individual

operators also intervened separately in the litigation.  *See Diné Citizens Against Ruining our Envt.*

*v. Jewell*, No. 15-cv-209, 2015 WL 4997207 (D.N.M. Aug. 14, 2015).

Because its interests are not adequately represented by Plaintiffs, the Federal Defendants,

or the other proposed intervenors, API should be allowed to intervene in this case as of right.

## II.    IN THE ALTERNATIVE, API QUALIFIES FOR PERMISSIVE INTERVENTION UNDER RULE 24(b).

Fed. R. Civ. P. 24(b)(1) and (3) provide in pertinent part:

> On timely motion, the court may permit anyone to intervene who . . . has a claim
> or defense that shares with the main action a common question of law or fact . . . .
> In exercising its discretion, the court must consider whether the intervention will
> unduly delay or prejudice the adjudication of the rights of the original parties….

API's and the Federal Defendants' defenses to the Petition for Review will involve

common questions of law—for example, the standards imposed by NEPA and the APA—and fact

regarding the Federal Defendants' fulfillment of their obligations under the statutes upon which

the Petition for Review relies.  In addition, as shown above, API has a substantial interest in the

14

outcome of this litigation.  Moreover, this litigation's basic simplicity as a primarily legal dispute belies any concern that API's intervention will result in prejudice to the original parties, and, at any rate, API's intervention vindicates "a major premise of intervention—the protection of third parties affected by pending litigation."  *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 971 (3rd Cir. 1998).  Finally, API applied to intervene in a timely manner, and no delay or prejudice can be shown to the rights of the original parties herein.  Thus, if the Court did not allow API to intervene as of right, it should allow API permissive intervention in the exercise of its sound discretion.

## III.   JOINT BRIEFING IS INAPPROPRIATE IN THIS CASE

As noted above, Plaintiffs have requested that, if granted intervention, API file joint briefs with the individual operators that have also sought to in intervene in this lawsuit.  But "the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all aspects of . . . litigation . . . without limitation."  *The Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000).  *See also* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1922 (3d ed. 2010) (questioning authority of courts to impose conditions on intervenor-of-right beyond those of a "housekeeping nature").  At any rate, the proposed intervenors have no interest in duplication of arguments, which would only diminish the persuasiveness of their briefs, and are therefore likely to coordinate to prevent advancing duplicative arguments.  In practice, avoiding duplication may be promoted simply by such informal coordination between the intervenors, and with the Federal Defendants.

Courts have routinely rejected similar demands for joint briefing, explaining that "a court should not mandate complete joint briefing lightly" given the different interests of intervenors as well as "the institutional constraints associated with joint briefing, including the understandable reluctance to share work product."  *WildEarth Guardians v. Salazar*, 272 F.R.D. 4, 20–21 (D.D.C. 2010) (denying request to impose joint briefing and instead requiring intervenors to "meet and

confer" to avoid duplication); *see also WildEarth Guardians*, 2016 WL 660123, at *3 (refusing to impose limitations on intervenors at the outset because "imposing those limitations could . . . prevent Movants from effectively representing their interests, which is the very purpose of their intervention"); *The Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 18 (D.D.C. 2000) (finding "the purposes of Rule 24 are best served by permitting the prospective intervenors to engage in all aspects of this litigation…without limitation"); 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1922 (3d ed. 2010) (questioning authority of courts to impose conditions on intervenor-of-right beyond those of a housekeeping nature).

Indeed, API represents "more than 625 companies involved in all aspects" of the oil and natural gas industry, "including the exploration, production, shipping, transportation, and refining of crude oil."   Milito Decl., ¶ 1.   By contrast, the operators represent their own individual "substantial property and contract rights" in the challenged APDs.   *See* Operators Mot. to Intervene (Dkt. No. 11), at 2.   API's interests are thus significantly broader than the individual operators' interests.   Because API members possess interests throughout the chain of exploration and production activities and therefore occupy a variety of relationships to the challenged APDs, API will "bring . . . point[ s] of view to the litigation not presented by" the individual operators. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 445 (9th Cir. 2006).   In short, API represents the "wide variety of interests" that are reflected in their memberships and may be separately impacted by Plaintiffs' claims. *Nat'l Wildlife Fed. v. U.S. Army Corps of Eng'rs*, 188 F.R.D. 381, 385 (D. Or. 1999) (granting intervention to permit holder and interested organizations). *Cf. United Guar. Residential Ins. Co. of Iowa v. Philadelphia Sav. Fund Soc'y*, 819 F.2d 473, 475–76 (4th Cir. 1987) (insurance lawsuit regarding mortgage certificates; holding single owner of certificates not adequately represented by trustee of all certificates because, *inter*

*alia*, the trustee "has a broader interest in protecting all of the certificate holders than . . . [the intervenor's] interest in protecting its own . . . certificates"); *id*. at 475 ("These multiple interests have the potential of dictating a different approach to the conduct of the litigation, an approach not consistent with what [the sole intervenor] may reasonably conceive to be its best interests.").

Given this disparity of interests, courts have permitted both individual oil and gas companies and trade associations—including API—separately to intervene and brief challenges to Government action in similar situations. *See*, *e.g.*, *WildEarth Guardians, et al. v. Jewell, et al.*, No. 16-cv-01724-RC, Order (Dkt. No. 19) at 6 (D.D.C. Nov. 23, 2016) (attached as Exhibit 2 hereto); *Ctr. for Biological Diversity, et al. v. U.S. Forest Serv., et al.*, No. 17-cv-00372, Order (Dkt. No. 71) at 3 (S.D. Ohio April 18, 2018) (attached as Exhibit 3 hereto).  Indeed, the District Court denied the Plaintiffs' identical request to impose joint briefing on API and the individual operators during Plaintiffs' prior challenge to BLM's approval of APDs authorizing horizontal drilling and hydraulic fracturing operations in New Mexico's Mancos Shale. *See Diné Citizens Against Ruining Our Environment v. Jewell*, No. 15-cv-209, Transcript (Dkt. No. 78) at 3–5 (D.N.M July 13, 2015) (attached as Exhibit 4 hereto).  The Court should likewise deny Plaintiffs' second attempt to impose joint briefing on the proposed industry intervenors.

## CONCLUSION

For the foregoing reasons, API meets the requirements for intervention pursuant to both Fed. R. Civ. P. 24(a) and 24(b).  API respectfully requests that this Court grant this motion for leave to intervene in this proceeding without limitation.  A proposed Order is submitted herewith.

Respectfully submitted,

MALDEGEN, TEMPLEMAN & INDALL LLP

*/s/ John J. Indall*
Jon J. Indall

August 22, 2019                          1925 Aspen Drive, 200A
Santa Fe, NM 87505
Phone: 505-216-3075
jindall@cmtisantafe.com

Steven J. Rosenbaum
  (*pro hac vice* forthcoming)
Bradley K. Ervin
  (*pro hac vice* forthcoming)
COVINGTON & BURLING, LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Phone:  (202) 662-6000
Fax:  (202) 662-6291
srosenbaum@cov.com
bervin@cov.com

*Attorneys for Applicant for Intervention*

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2019, I caused a true and correct copy of the foregoing Motion for Leave to Intervene and all accompanying attachments, to be filed with the Court electronically and served by the Court's CM/ECF System upon the following:

Julia Katherine Guarino
Kyle Tisdel
Western Environmental Law Center
208 Paseo del Pueblo Sur, #602
Taos, NM 87571
Phone: (575) 224-6205
guarino@westernlaw.org
tisdel@westernlaw.org

Daniel L. Timmons
Samantha Ruscavage-Barz
WildEarth Guardians
301 N. Guadeloupe St., Suite 201
Santa Fe, New Mexico 87501
Phone: (505) 570-7014
dtimmons@wildearthguardians.org
sruscavagebarz@wildearthguardians.org

Karimah Schoenhut
Sierra Club
50 F St. N.W., 8th Floor
Washington, DC 20001
Phone (202) 548-4584
Fax: (202) 547-6009
karimah.schoenhut@sierraclub.org

*Counsel for Plaintiffs*

Corinne Snow
U.S. Department of Justice
Environment & Natural Resources Division
950 Pennsylvania Ave., N.W.
Washington, DC 20530
Phone: (202) 514-3370
corinne.snow@usdoj.gov

*Counsel for Federal Defendants*

Hadassah M. Reimer
Holland & Hart LLP
P.O. Box 68
Jackson, WY 83001
Phone: (307) 739-8175
Fax: (307) 739 8175
hmreimer@hollandhart.com

John Frederick Shepherd
Holland & Hart LLP
P.O. Box 8749
Denver, CO 80201
Phone: (303) 295-8000
Fax: (303) 295-8261
jshepherd@hollandhart.com

Robert J. Sutphin
Holland & Hart LLP
P.O. Box 2208
Santa Fe, NM 87504
Phone: (505) 988-4421
Fax: (505) 983-6043
rsutphin@hollandhart.com

Kristina R. Van Bockern
Holland & Hart LLP
555 17th St., Suite 3200
Denver, CO 80202
Phone (303) 295-8000
Fax: (720) 545-9952
trvanbockern@hollandhart.com

*Counsel for Intervenor-Defendants BP*
*American Production Company and DJR*
*Energy Holding, LLC*

Troy A. Eid
Jennifer Harvey Weddle

1

James Noble
Jens Jensen
Keith D. Tooley
Rebecca W. Watson
Welborn, Sullivan, Meck & Tooley, PC
1125 17th St., Suite 2200
Denver, CO 80202
Phone: (303) 830-2500
Fax: (303) 832-2366
jnoble@wsmtlaw.com
jjensen@wsmtlaw.com
ktooley@wsmtlaw.com
rwatson@wsmtlaw.com

*Counsel for Intervenor-Defendant Enduring Resources IV, LLC*

Francesca Ciliberti-Ayres
Matthew Crockett
Greenberg Traurig
1200 17th St., Suite 2400
Denver, CO 80202
Phone: (303) 572-6500
Fax: (720) 904-7621
eidt@gtlaw.com
weddlej@gtlaw.com
ciliberti-ayresf@gtlaw.com
crockettm@gtlaw.com

*Counsel for Intervenor-Defendant Navajo Allottees*

*/s/ John J. Indall*
Jon J. Indall