IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DINÉ CITIZENS AGAINST RUINING
OUR ENVIRONMNENT, et al.,

      Plaintiffs,

  v.                                                    Case No. 19-cv-00703 WJ-JFR

DAVID BERNHARDT, et al.,

      Federal Defendants.

## ORDER REGARDING SETTING OF HEARING ON MOTION FOR INJUNCTIVE RELIEF

THIS ORDER is entered *sua sponte* and my purpose in issuing this order is to dispel the parties and their counsel from what I perceive to be unrealistic expectations concerning the speed with which matters in this complex environmental case can be heard and more specifically, to afford the parties and their counsel some understanding as to why I have not yet set a hearing on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 5).

Plaintiffs in this environmental case are collectively citizens groups seeking to prevent the drilling and fracking of shale oil wells by the Bureau of Land Management ("BLM") and its officials ("Federal Defendants") on lands in the Mancos Shale/Gallup formations of the San Juan Basin in Northwestern New Mexico ("Mancos Shale"). For the past several years some (maybe all) of the Plaintiffs have been actively litigating claims against the BLM since filing their first lawsuit in 2015, *see Diné Citizens v. Jewell*, No. 1:15-cv-00209, ECF No. 1 (D.N.M. March 11, 2015), and have amended their petition or complaint several times to include claims and issues

surrounding additional environmental assessments done within the Mancos Shale.[1]  This lawsuit is Plaintiffs' second round of litigation.

On August 1, 2019, Plaintiffs filed their motion for injunctive relief.  Counsel for various parties have repeatedly called my office requesting information on a possible hearing date for the motion and members of my staff have informed counsel that a setting in the near future was unlikely, in light of the current state of affairs in this district.  More specifically, the United States District Court for the District of New Mexico is one of the five southwest border courts and like the other border courts, this District Court is currently operating under a large and ever-increasing criminal case load which is driven by what is happening along the southwest border.  Additionally, while Congress has authorized seven active district judge positions for this District Court, as of the date of entry of this Order there are three district judge vacancies two of which have been vacant for over a year.  The President has nominated two individuals to fill two of the three vacant district judge positions, but these individuals await Senate confirmation.  Accordingly, the overall caseload of the District combined with the current judicial vacancies has created a situation where judges are carrying much higher caseloads than normal so in terms of my current caseload, I am not able to proceed to adjudicate civil cases as timely and as efficiently as in the past when there were no judicial vacancies and I carried a smaller caseload.  Moreover, I must give priority to criminal defendants because their liberty interests are at stake.  Finally, while on the topic of cases, I'll note that one of the Plaintiffs in the instant case, the Wildearth Guardians, is also the plaintiff in an environmental/endangered species act case against the U.S. Army Corps of Engineers and

---

[1] The National Environmental Policy Act ("NEPA") requires federal agencies to prepare a detailed environmental impact statement ("EIS") for all "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. §4332(C).  To determine whether a proposed action may significantly affect the quality of the human environment, thus requiring an EIS, agencies can prepare a shorter environmental assessment. *See Richardson v. BLM*, 565 F.3d 683, 703 (10th Cir. 2009). ) 40 C.F.R. § 1501.4.

the U.S. Fish and Wildlife Service (15-CV-0159-WJ-KBM) concerning whether the Army Corps of Engineers should proceed to replace a 43 mile stretch of levees along the Rio Grande River near Socorro, New Mexico.  That case is a 2015 case and the parties are awaiting my decision so I intend to issue an opinion and order in that case before I devote time and resources to any of the pending matters in the instant case.

Nevertheless, I did review Plaintiffs' motion for injunctive relief and I have several observations.  First, while Plaintiffs chose to characterize their request for injunctive relief as a motion for temporary restraining order ("TRO") and preliminary injunction, I see no basis for issuing a TRO.  Rule 65 of the Federal Rules of Civil Procedure pertains to injunctions and TROs and the clear language of the rule contemplates TROs issuing ex parte and on an expedited basis and there is just no legal basis for a TRO to issue in this case based on what Plaintiffs have filed to date and the Federal Defendants have filed a response.  Plaintiffs may be able to establish that they are entitled to injunctive relief, but if an entitlement to such relief is established, it will be in the form of a preliminary or permanent injunction.

Second, Plaintiffs' motion for injunctive relief includes over three thousand (3,000) exhibits, and the response includes over 200 exhibits.  It is totally unrealistic for counsel in this case to expect me, in less than 30 days, to have reviewed and set a hearing on a motion and response with more than 3,200 exhibits when counsel in this case have had months to prepare their pleadings and may very well have been involved in litigating the earlier case filed in 2015.

Third, Plaintiffs rely heavily on a recent Tenth Circuit decision, *Diné Citizens Against Ruining Our Env't v. Bernhardt*, which found that the BLM was arbitrary and capricious for failing to "consider the cumulative water use associated with 3,960 reasonably foreseeable horizontal Mancos Shale wells."  923 F.3d 831, 858 (10th Cir. 2019) (*"Diné CARE I"*).  Plaintiffs claim that

3

this decision, which came at the end of their first round of litigation against the BLM, indicates that the environmental assessments done by the agency in this case will suffer similar deficiencies. 923 F.3d 831, 858 (10th Cir. 2019) ("*Diné CARE I).* Obviously the Court of Appeals' decision in *Diné CARE I* will factor heavily into the parties analysis and arguments presented in this case and the decision is controlling precedent, but as this preliminary stage the holding of *Diné Care I* may have some practical limitations in two areas. First, the Tenth Circuit affirmed the district court's dismissal of the majority of Plaintiffs' claims *except for* the sole discrete issue of BLM's failure to consider cumulative water impacts from the drilling for certain parcels of land. Second, one would think that perhaps the BLM is taking steps to ensure that the same mistakes are not made again recognizing of course that the Tenth Circuit's decision in *Diné CARE I* was issued less than four months ago. While the Court is under the impression that BLM intends to proceed with drilling and fracking shale oil wells, it is already starting to revisit the analyses done in the 32 environmental assessments that are challenged here in this case in order to ensure that the agency's analysis comports with the Tenth Circuit mandate. Also, Plaintiffs' claims of urgency are relative within this entire litigation scheme. The 32 environmental assessments challenged in this lawsuit were issued prior to the district court's final order in the prior lawsuit, but were not included in any of the several pleading amendments in that case.

    Another thought that occurs to me at this preliminary and very early stage of the proceedings is whether Plaintiffs' motion for injunctive relief is subject to a ripeness challenge, which attenuates any claim of urgency for the motion to be heard. Even after an environmental assessment is completed, a new well may not be drilled unless the operator first receives specific approval of its drilling plan through the submission of an Application for Permits to Drill ("APD")

4

to BLM.  Plaintiffs are challenging APD's which have not all been approved, yet they seek to enjoin operations not only on the pending APD's but also all future applications.

Therefore, for the above stated reasons, I will set Plaintiffs' motion for injunctive relief when I am ready for the motion to be heard and not before then.

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE